## Stege v. Louisville Courier Journal Company.

(Decided December 12, 1922.)

Appeal from Jefferson Circuit Court
(Common Pleas, Second Division).

Associations—Action By Newspaper Upon Advertising Contract.—Members of a voluntary association organized for the purpose of carrying on some enterprise which is calculated to involve them in financial loss and who knowingly give aid and assistance to the undertaking, and hold themselves out as supporting it are liable to creditors who in reliance upon the acts and conduct of the members of the association extend credit to such association.

EDWARDS, OGDEN & PEAK for appellant.

BINGHAM, PETER, TABB & LEVI for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The Louisville Courier Journal Company brought this suit against H. C. Stege and several other individuals, and the Junior Order of United American Me-

chanics, a secret society, to recover about $1,900.00 for space in certain newspapers used for advertising a show which the defendants, or some of them, put on at the state fair grounds in Louisville sometime in the year 1920. The cause being submitted to a jury it returned a verdict for the plaintiff company in the full sum sued for with interest from January 22, 1920, against C. B. Riley, W. R. Leight, J. C. Hessee, C. F. Zangler, A. L. Walter, C. H. Stege and J. R. Clemens. Only Stege appeals. Several other of the defendants, including the Junior Order of United American Mechanics, were discharged by a directed verdict, and there is no cross-appeal.

The suit arose out of an attempt on the part of an association of men more or less closely connected with the Junior Order of United American Mechanics to put on a wild west show under the direction of Dakota Jack for the purpose of raising money to build a house. The men contracting with Dakota Jack were to organize and incorporate a building association for the purpose of erecting a home for the secret order and its members. It was the purpose of the building association to raise funds in one or more ways to pay the cost of erecting such building. As declared in its articles of incorporation it had power to contract and to be contracted with and to raise funds in several different ways named, including that of putting on shows. The corporation was never perfected although the articles were properly signed and acknowledged by the members and recorded in the Jefferson county court, but when sent to the secretary of state at Frankfort, it was found that the name which the corporation had assumed was so much like the name of another corporation already organized under the laws of this state that the secretary declined to grant the charter under the name it had attempted to assume and returned the papers for correction. The association failed to make any correction or to carry its articles of incorporation to perfection and the body was not in fact incorporated. In the meantime however they had raised some small funds by subscription or otherwise and then came along Dakota Jack with his show and proposed to put it on at the state fair grounds in Jefferson county and to give to the building association forty per cent (40%) of the proceeds, but the association was to do a certain amount of advertising and to provide certain parts of the show paraphernalia. In

organizing the association appellant Stege took a rather conspicuous part because of his desire to help out a good cause. He was present at several of the meetings although he did not favor putting on the wild west show. In fact he openly opposed it but being a new member of the secret order of which this association was an auxiliary he did not feel justified in trying to control his brethren who thought well of the idea. At any rate the contract was entered into between the wild west show people and the association by which the show was to be put on at the fair grounds. Some time before the show was put on it became necessary to obtain some cattle to be used in the show and to this end $3,400.00 was necessary. A note was made to the bank and this note appellant Stege signed. For a while he was treasurer of the association and handled its funds. He knew about the show and when it was to be put on and the purpose for which it was to be put on. He was anxious to see it succeed because he thought it would benefit the secret order to which he had joined himself. In preparing for this show the association appointed a publicity committee consisting of three persons who were directing the advertising of the show and this they did by buying space in the Courier-Journal and Times and other newspapers in Louisville, which space was occupied by glowing stories of the wild west show. Several of the advertisements have been clipped from the newspapers and are made exhibits in the record. The show was a complete failure and the association which started out to raise money for a worthy purpose lost a great deal of money. The Junior Order of United American Mechanics did not undertake to put on the show but left it to the auxiliary corporation, and according to this record is not liable for any part of the expenses incurred in putting it on.

Appellant Stege insists that he is not liable for any part of the expenses of advertising because he did not order it to be done and was not present at any time when such order was made by the association, and when he saw the advertisement in the newspapers he did not know who had caused it to be printed nor the cost of it nor that he was expected to contribute to its cost. Ordinarily members of a voluntary organization or association are not liable for such bills if such society be not engaged in a business enterprise and did not contemplate profits or losses, but which are organized for moral, social, beneficial, literary, scientific, political or other

like purposes, and the individual members of such an organization are not partners so as that the act of one binds all the others. 5 C. J. 1334. But this rule does not apply to the facts we have here. This organization was, as stated in its articles of incorporation, brought into existence for the purpose of raising money out of different occupations or businesses for the use and benefit of the secret society. They expected to engage in the show business for a week under the direction of Dakota Jack and thus make a considerable sum of money. As the society of Junior Order of United American Mechanics engaged in work of charity and benevolence it might have raised funds for the purpose of carrying on such work without incurring the liability which the association incurred, but the association formed for a different purpose could not do so without its members incurring liability. It is likewise a rule that where members of a voluntary organization associate themselves together for the purpose of carrying on some enterprise which is calculated to involve them in financial loss, the members so engaging in the enterprise and who knowingly give aid and assistance to it and hold themselves out as supporting it, are liable to creditors who are led to believe by the conduct and conversation of such members that they expect to financially back the enterprise.

Finding no error to the prejudice of appellant Stege, the judgment must be and is affirmed.

Judgment affirmed.